UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
DEBORAH L. BOARDMAN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
Fax: (410) 962-2577
MDD_DLBChambers@mdd.uscourts.gov

March 31, 2021

LETTER TO COUNSEL

RE:   *Shirley T. v. Saul*
      Civil No. DLB-19-2837

Dear Counsel:

On September 26, 2019, plaintiff petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny her claim for Disability Insurance Benefits. ECF 1. I have considered the parties' cross-motions for summary judgment and plaintiff's response. ECF 12 ("Pl.'s Mem."); ECF 14 ("Def.'s Mem."); ECF 15 ("Pl.'s Reply."). I find no hearing necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the denial if the SSA employed correct legal standards in making findings supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions, reverse the Commissioner's decision in part, and remand the case to the Commissioner for further consideration. This letter explains my rationale.

Plaintiff filed her claim for benefits on February 8, 2016, alleging an onset date of November 30, 2015. Administrative Transcript ("Tr.") 153-55. The SSA denied her claims initially and on reconsideration. Tr. 79, 92. An Administrative Law Judge ("ALJ") held a hearing on April 13, 2018. Tr. 32-58. Following the hearing, the ALJ determined plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 12-31. Because the Appeals Council denied plaintiff's request for review, the ALJ's decision constitutes the final, reviewable decision of the SSA. Tr. 1-6; *see Sims v. Apfel*, 530 U.S. 103, 106-07 (2000); 20 C.F.R. § 422.210(a).

The ALJ found plaintiff severely impaired by "lumbar scoliosis, degenerative disc disease, disc herniation, stenosis, facet hypertrophy and ligamentous hypertrophy, and right knee osteoarthritis." Tr. 17 (internal citation omitted). Despite these impairments, the ALJ determined plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except occasionally climbing, balancing, stooping, kneeling, crouching, crawling; occasionally push/pull with the

*Shirley T. v. Saul*
Civil No. DLB-19-2837
March 31, 2021
Page 2

> left lower extremity; occasional exposure to vibration and workplace hazards (e.g., unprotected heights and dangerous moving machinery); and requires a sit/stand option where she can stand from a seated position while remaining on task at the work station with normal breaks.

Tr. 20. The ALJ consulted a vocational expert ("VE") and the Dictionary of Occupational Titles ("DOT"). Tr. 47-57. The VE testified, apparently based on her own experience and the DOT, that plaintiff acquired transferable skills from her past relevant work. Tr 48-57. After considering the VE's testimony, the ALJ determined plaintiff was unable to perform her past relevant work as a school bus driver, certified nursing assistant ("CNA") (DOT 355.674-014)[1], or as a composite CNA-bus driver. Tr. 25. The ALJ found plaintiff was an individual of advanced age because she was 56 years old as of her alleged onset date, Tr. 25 (citing 20 C.F.R. § 404.1563); "ha[d] at least a high school education[,] and could communicate in English," Tr. 25 (citing 20 C.F.R. § 404.1564). The ALJ also found plaintiff "ha[d] acquired work skills from [her] past relevant work." Tr. 25 (citing 20 C.F.R. § 404.1568). The ALJ finally found that, considering plaintiff's "age, education, work experience, and [RFC] . . . [and] acquired work skills from past relevant work," plaintiff could perform jobs existing in significant numbers in the national economy. Tr. 25-27. Specifically, the ALJ gave great weight to the VE's testimony and found plaintiff could perform "the job of a companion," Tr. 26 (citing DOT 309.677.010), a job which the VE testified plaintiff could perform considering the "transferrable skills" plaintiff acquired in her previous work as CNA. Tr. 47-57. The ALJ also found plaintiff could perform a number of unskilled occupations. Tr. 26 (citing work as a marker, DOT 209.587.034; a ticket seller, DOT 211.467-030; and a routing clerk, DOT 222.687-022). Therefore, the ALJ concluded plaintiff was not disabled. Tr. 27.

On appeal, plaintiff argues the ALJ's decision is unsupported by substantial evidence because the ALJ erroneously found plaintiff acquired transferrable skills from her work as a CNA. Pl.'s Mem. 9-25 (citing, in relevant part, SSR 82-41, 1982 WL 31389 (Feb. 26, 1979) ("Titles II and XVI: Work Skills and Their Transferability as Intended by the Expanded Vocational Factors Regulations Effective February 26, 2979"); 20 C.F.R. Pt. 404, Subpt. P, App. 2 ("the grids"); *Hirsch v. Colvin*, No. CIV-14-1289-STE, 2017 WL 538489 (W.D. Okla. Feb. 9, 2016)); Pl.'s Reply. The Commissioner disagrees but cites no case supporting his position. *See* Def.'s Mem. 5-10. The parties also dispute whether an apparent conflict exists between the occupations identified by the VE and plaintiff's capabilities. *See id.*; Pl.'s Mem. 9-25. I agree with plaintiff that the ALJ erred in finding plaintiff had acquired transferable skills. Accordingly, I remand, but I express no opinion as to plaintiff's ultimate entitlement to benefits.

The grids "relieve the Secretary of the need to rely on [VEs] by establishing through rulemaking the types and numbers of jobs that exist in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 461 (1983). The grids organize physical ability, age, education, and work experience into a matrix that contains rules establishing the existence of jobs in significant numbers in the national economy for individuals with specific combinations of these four factors.

---

[1] CNA, nurse assistant, and nurse aide—as used throughout this opinion and the materials cited therein—each refer to the same occupation in the DOT found at 355.674-014 (Nurse Assistant, with the alternate title: "Nurse Aide").

*Id.* at 461-62. When a claimant perfectly fits a combination of the four factors existing in the matrix, the grids "direct a conclusion as to whether work exists that the claimant could perform." *Id.* at 462. In this case, the ALJ found plaintiff was an individual of advanced age with at least a high school education and past relevant work that was semi-skilled, none of which plaintiff could perform. Tr. 25. Additionally, the ALJ found plaintiff was limited to light work. Tr. 20. Plaintiff argues her medical-vocational profile fits Rules 202.06 or 202.07, and the Commissioner does not dispute the applicability of these rules. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2; *see* Def.'s Mem. 5-10. Rules 202.06 and 202.07 provide that plaintiff is not disabled if she has transferable skills from her previous skilled or semi-skilled work, but she is disabled if she does not have such transferable skills. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rules 202.06, 202.07.

Transferable skills are skills acquired from previous skilled or semi-skilled work activities that "can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work." 20 C.F.R. § 404.1568(d). Transferability of skills is "most probable and meaningful" between jobs (1) requiring the same or a lesser degree of skill; (2) using the same or similar tools and machines; and (3) involving the same or similar raw materials, products, processes, or services. *Id.* § 404.1568(d)(2); *see id.* § 404.1568(d)(4) (stating that this framework applies to claimants with plaintiff's profile). Similarities may be remote or incident, and "a complete similarity of all three factors is not necessary for transferability." *Id.* § 404.1568(d)(3).

SSR 82-41 "further explain[s] the concepts of 'skills' and 'transferability of skills' and . . . clarif[ies] how these concepts are used in disability evaluation." 1982 WL 31389, at *1. "[C]lose attention must be paid to the actual complexities of the job in dealing with data, people, or objects and to the judgments required to do the work." *Id.* at *3. "The Secretary must show that specific skills *actually acquired* in the [past relevant work] are transferable. . . ." *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Winn v. Schweiker*, 711 F.2d 946, 948 (10th Cir. 1983)) (emphasis added). Testimony from a VE may assist the ALJ in finding the "[s]kills, level of skills[,] and potential occupations to which skills from [past relevant work] may be transferred," but the ALJ bears the ultimate responsibility for making the findings. 1982 WL 31389, at *4. And, like all an ALJ's findings, the ultimate determination must be supported by substantial evidence. 42 U.S.C. § 405(g).

SSR 82-41 explains Social Security policy by way of example. The ruling uses plaintiff's past relevant work at issue to illustrate that while some workers may acquire skills from a particular job, other workers in that same occupation might not:

> Slightly more complex, *at a higher level of semiskilled work*, are jobs like that of a nurse aide, who may also serve food to people. A nurse aide ordinarily performs other tasks which do not provide a special advantage over unskilled workers, such as dusting and cleaning rooms, changing bed linens, and bathing, dressing, and undressing patients. The only duties which suggest transferable skills are those related to "nurse" rather than "aide"—taking and recording the rates of temperature, pulse and respiration; and recording food and liquid intake and output. However, these occasional or incidental parts of the overall nurse aide job, which are a small part of a higher skilled job (nurse), would not

> ordinarily give a meaningful vocational advantage over unskilled work. The extent of such duties, however, may vary with individual nurse aides.

SSR 82-41, 1982 WL 31389, at *3 (emphasis in original).

Significantly, a claimant's acquisition of transferable skills is appropriately considered at step five of the sequential analysis. *Id.* at *1 ("Transferability of skills is an issue only when an individual's impairment(s), though severe, does not meet or equal [a listing] . . . but does prevent the performance of past relevant work . . . that . . . has been determined to be skilled or semi-skilled."); *Monroe v. Colvin*, 826 F.3d 176, 180 (4th Cir. 2016). The Commissioner bears the burden of proof at step five. *Monroe*, 826 F.3d at 180. Plaintiff met her initial burden at steps one through four by demonstrating her severe, medically determinable impairments prevented her from performing her past relevant work. *See id.*; Tr. 25.

In *Hirsch*, a factually analogous case, the Court remanded for an ALJ's failure to support his finding that the plaintiff acquired transferable skills from her previous jobs as a nurse's aide, DOT 355.674-014, and a home health aide, DOT 354.377-014. 2016 WL 538489, at *2, *4. The plaintiff reported that, in these positions, "she was required to: do laundry, clean, and cook; help patients bathe, shower, eat, walk, and get into their wheelchairs; and hand out medications." *Id.* at *2 (internal citations omitted). At the hearing, the plaintiff testified that she "helped the residents with their personal care" and cooked, cleaned, baked—"[t]hings like, of that nature." *Id.* at *3 (internal citation omitted). The VE testified that the plaintiff "had obtained skills . . . [including] patient care, charting, basic record keeping, taking vitals, and scheduling." *Id.* (internal citation omitted). The Court noted that "[a] lack of correlation exists between the VE's testimony regarding [the plaintiff's] transferable skills and [the plaintiff's] testimony regarding what skills she had actually obtained from the past work." *Id.* The Court also "assume[d] that the VE had consulted the DOT for the information because: (1) the VE had cited the DOT regarding the skill and exertional levels of the past work and (2) the skills identified by the VE correlated with skills listed in the DOT job listings." *Id.* (internal citations omitted). The Court found that "though the VE properly consulted the DOT, the dictionary alone cannot provide substantial evidence regarding a claimant's transferable skills." *Id.* (citing *Dikeman v. Halter*, 245 F.3d 1182, 1185 (10th Cir. 1993)).

Similarly, in *Hutchison v. Cmm'r, Soc. Sec. Admin.*, No. 2:17-cv-1140, 2018 WL 3386310 (S.D. Ohio July 12, 2018), the ALJ found the plaintiff had acquired transferable skills from her job as a CNA (or nurse aide, as the DOT refers to the position) but failed "to conduct a transferable skills analysis that includes paying close attention to 'the actual complexities of the job.'" 2018 WL 3386310, at *7 (citing SSR82-41(2)(d)); *Barr v. Berryhill*, No. 2:16-cv-42, 2017 WL 2803176, at *10 (N.D. W. Va. June 13, 2017)). The VE testified the plaintiff acquired the transferable skills of "effective verbal communication, knowledge of medical terminology, and basic recordkeeping." *Id.* at *8. The plaintiff indicated only that she gave "hands-on personal care" in clients' homes, which entailed lifting and transferring clients, bathing them, moving them, running some of their errands, cleaning their homes, and lifting their groceries. *Id.* The Court found the "[p]laintiff's work mirrored the example in SSR 82-41(2)(d), which indicated that, 'absent

*Shirley T. v. Saul*
Civil No. DLB-19-2837
March 31, 2021
Page 5

extraordinary circumstances,' a nurse aide position ' would *not* provide a meaningful vocational advantage over unskilled work' and thus does not give rise to 'transferable skills.'" *Id.* (citing *Barr*, 2017 WL 2803176, at *12 (emphasis in original)). Accordingly, the Court remanded for want of substantial evidence supporting the ALJ's finding that the plaintiff acquired transferable skills. *Id.* at *9.

Here, plaintiff indicated in her work history report that she "took blood pressure;" fed, bathed, and dressed patients; assisted patients with walking; assisted with transporting patients from their beds to wheelchairs and back; lifted patients; carried laundry and trays of food; cleaned patients' homes; fixed patients breakfast; shaved patients; took patients on outings; and put patients in wheelchairs and vans. Tr. 191-96. She testified she stopped working because she "was at [her] client's house, and [she] went downstairs and brought her [client's] clothes up from downstairs, and [her] back gave out, and [she] had to crawl up the steps." Tr. 38. She testified that she transported "patients from the bed to the living room, into the wheelchair, out to the van." Tr. 39. She testified she would "take them places." Tr. 39. The ALJ asked whether plaintiff took the patients to "doctor visits, that type of thing." Tr. 39. Plaintiff replied, "No, I had to take them up to the mall, or if there was [an] event, any kind of activity. I would take them in the van, take them to church and stuff like that." Tr. 39.

The VE classified plaintiff's past work as, in relevant part, a nurse assistant. Tr. 48. The ALJ asked whether plaintiff acquired transferrable skills form her former employment. Tr. 48. The VE testified plaintiff had, including "[p]atient care, charting, taking vitals, following a treatment plan, basic medical terminology, [and] anatomy." Tr. 48-49. The ALJ asked to which jobs at the light and sedentary exertional levels plaintiff's "acquired skills" would transfer. Tr. 49. The VE testified those skills would transfer to no jobs at the sedentary level and only one job at the light level: companion. Tr. 49; *see* DOT 309.677-010. The VE further testified a hypothetical individual identical to plaintiff could perform three unskilled positions. Tr. 51.[2] Plaintiff's representative asked the VE, "[I]f I indicated to you that Social Security's regulations consider that a nursing aide is a position where skills generally do not transfer to other work, does that have any impact on your opinion today." Tr. 56-57. The VE replied:

> No, because I've personally done both jobs, and the skills would transfer. Those jobs are usually work [sic] in tandem with each other. They're complimentary—nursing home, convalescent home or end of life hospice or home healthcare. And those are typically complimentary services, and therefore they share much of the same skills.

Tr. 57.

Here, as in *Hirsch*, "[a] lack of correlation exists" between the VE's statement of plaintiff's acquired skills and plaintiff's own characterization of her work as a CNA. 2016 WL 538489, at *3. Plaintiff's primary responsibilities seem to involve "tasks which do not provide a special

---

[2] The Court does not analyze these jobs because the grids instruct that plaintiff should be found disabled if the ALJ found she had no transferable skills, regardless of her ability to do unskilled work. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rules 202.06, 202.07.

*Shirley T. v. Saul*
Civil No. DLB-19-2837
March 31, 2021
Page 6

advantage over unskilled workers, such as dusting and cleaning rooms, changing bed linens, and bathing, dressing[,] and undressing patients." SSR 82-41, at *3. The only reference plaintiff made to anything resembling "charting, taking vitals, following a treatment plan, basic medical terminology, [and] anatomy" is to her duty in one job to "take blood pressure." *See* Tr. 48-49, 192. Plaintiff indicated no other work that involved the "nurse" component of "nurse aide." Indeed, plaintiff testified she did not even take patients to medical appointments. Tr. 39. Rather, she would "take them to church and stuff like that." Tr. 39. Even if taking blood pressure can stand in for taking the entire category of "vitals," which according to the DOT also includes taking "and recording temperature, . . . pulse and respiration rates, and food and fluid intake and output," plaintiff never mentioned "charting, . . . following a treatment plan, basic medical terminology, [and] anatomy." DOT.355.674-014; *see* Tr. 48-49, 191-96. The VE's statement that she herself had acquired these skills in her job as a CNA does not provide substantial evidence for the "specific skills [plaintiff] *actually acquired*" in plaintiff's past relevant work. *Pyles*, 849 F.2d at 848 (emphasis added). Neither had plaintiff provided evidence of most of the transferable skills the VE identified. Accordingly, remand is appropriate because the ALJ's finding is unsupported by substantial evidence. *Patterson*, 846 F.3d 656, 658 (4th Cir. 2017) (citing *Meyer v. Astrue*, 662 F.3d 700, 707 (4th Cir. 700, 707 (4th Cir. 2011); *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)) ("Where an insufficient record precludes a determination that substantial evidence supported the ALJ's denial of benefits, this court may not affirm for harmless error.").

For the reasons set forth herein, plaintiff's motion for summary judgment, ECF 12, is denied, and the Commissioner's motion for summary judgment, ECF 14, is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is reversed in part due to inadequate analysis. The case is remanded for further proceedings in accordance with this opinion.

Despite the informal nature of this letter, it should be flagged as an opinion. A separate order follows.

Sincerely yours,

/s/

Deborah L. Boardman
United States Magistrate Judge